UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | CASE NO.: 1:17-CR-12-TLS |
| | ) | |
| STEVE BENNETT | ) | |

**OPINION AND ORDER**

The Defendant, Steve Bennett, pled guilty to being a person convicted of a misdemeanor crime of domestic violence in possession of a firearm, in violation of 18 U.S.C. § 922(g)(9). The probation officer drafted a Presentence Investigation Report (PSIR) in preparation for sentencing. This Opinion and Order resolves the Defendant's objection to the PSIR.

**BACKGROUND**

The Defendant has a misdemeanor conviction for Domestic Violence from Cook County, Illinois, which prohibits him from possessing a firearm. On February 22, 2017, the Fort Wayne Police Department (FWPD) executed a search warrant at 3606 Hanna Street, Fort Wayne, Indiana (the residence), based on anonymous tips, surveillance by the FWPD, and statements from arrested individuals that narcotics were sold from the residence. Upon arrival at the residence, the officers located Iesha Bennett, the Defendant's sister, and began reading her the search warrant. During this time, Ms. Bennett stated that "none of the drugs are mine, the only thing that is mine is the gun in my purse." Shortly thereafter, the Defendant ran up to the residence and stated "this is my house." He had a front door key to the residence. Members of the FWPD transported the Defendant to the station for an interview, and other officers continued

executing the search warrant. Young children (the Defendant's girlfriend's daughter and Ms. Bennett's children) were also in the house.

During the search, the officers observed numerous packaged narcotics in the dining room; plastic bags with green substances in individual smaller plastic bags; digital scales; numerous .22 caliber shell casings; a pill bottle in the dining room closet with the Defendant's name; a black loaded Ruger 9mm semi-automatic handgun, SN 316-77500, loaded with eight rounds and a 30 round magazine attached; a silver with wood grips .22 cal. Jennings J-22, SN 720056 containing six rounds located in a purse identified as belonging to Ms. Bennett; a black 9mm Smith and Wesson Shield, SN HnH9474 loaded with 6 rounds; a City of Fort Wayne utility bill for John Bennett, the Defendant's brother; 185 various rounds of ammunition; and a total of 67.3 grams of illegal narcotics. The Ruger and the Smith and Wesson were determined to be stolen. The officers also noted that an elaborate camera monitoring system was set up in the kitchen. The cameras provided a live stream of the exterior doors and sides of the residence.

At the station, the Defendant was read his rights and agreed to speak with law enforcement. He advised that he stays in one of the bedrooms sometimes, and that the clothes in the room belong to himself, his wife, and his girlfriend. He stated that he was in the midst of paying $550 in rent for the residence when he received a phone call that the police were at his house. The Defendant then advised the driver to return him to the residence so he could see what was happening at "his" residence. He stated that he purchased all three firearms and used one for the protection of the home by keeping it under the mattress in the bedroom where police located it. The Defendant also stated that he frequently partied and used marijuana inside the home by himself and with others.

The Defendant was then informed that allowing individuals to smoke marijuana in the residence constituted maintaining a common nuisance, a felony offense. At that point, the Defendant stated that the residence was not his and that he was paying rent for George Goodson, who was the "main guy of the house." The Defendant also advised that John Bennett was the main dealer and the Defendant only sold the narcotics about ten times. Ms. Bennett stated that she paid rent to Goodson.

The Defendant was charged with being a felon in possession of a firearm (Count 1) and with being a person convicted of a misdemeanor crime of domestic violence, in possession of a firearm (Count 2). On June 6, 2017, the Defendant entered a plea of guilty to Count 2 of the Indictment. Pursuant to the terms of a Plea Agreement, the Government agreed to dismiss Count 1 of the Indictment at the time of sentencing.

The PSIR includes a four-level enhancement to the base offense level on grounds that the Defendant possessed the firearm in connection with another felony. *See* U.S.S.G. § 2K2.1(b)(6)(B) (providing for increase in base offense level if the defendant used or possessed any firearm "in connection with another felony offense"). The probation officer's basis for applying the enhancement is set forth in paragraphs 22 and 23 of the PSIR:

> This officer independently reviewed the investigative documents prepared by the Fort Wayne Police Department and the Bureau of Alcohol, Tobacco, Firearms and Explosives. The above detailed offense conduct accurately reflects and portrays the defendant's conduct in the instant offense. Offense conduct, including all relevant conduct, involves three firearms, all of which the defendant admitted belonged to him or that he had purchased for the home for protection. These firearms include a sliver with wood grips .22 caliber Jennigs J-22, serial number 720056; a black 9mm Smith and Wesson Shield, bearing serial number HNH9474; and a black Ruger 9mm semi- automatic handgun, serial number 316-77500, which was loaded with eight rounds and had a 30 round magazine attached to it. Both the Ruger 9mm handgun and the Smith and Wesson Shield were stolen. This officer will also consider that the defendant was a prohibited person at the time he committed the offense, as he was convicted of Domestic Violence in Cook County, Illinois, in case number 0814482801.

3

> Additionally, this officer will consider that the defendant used or possessed the firearms in connection with another felony offense, specifically Maintaining a Common Nuisance, a Level 6 Felony. As described above, investigative documents detail that the defendant stated "this is my house" in reference to the home. He had a key to the front door and stated he frequently stays in the residence. He had belongings throughout the home, to include a pill bottle in the dining room closet and clothes belonging to him, his wife, and his girlfriend in the bedroom. He originally advised officers that he had just left the residence to go pay the rent; although, he later changed this statement. Drugs and drug paraphernalia were located throughout the home to include packaged narcotics in the dining room; a small baggie with green, sandwich baggies, plant like residue in the bedroom; 63.7 grams of illegal narcotics; and two digital scales, all in close proximity to the weapons. Mr. Bennett admitted he used marijuana at the residence and that on some occasions individuals would come to the home to smoke marijuana and party. Mr. Bennett further revealed he had sold spice approximately ten times, had an elaborate camera system set up in the home, and described at least one of the firearms as having been purchased for protection of the occupants of the home.

(PSIR ¶¶ 22–23, ECF No. 30.)

The Defendant filed a Sentencing Memorandum [ECF No. 32] in which he objects to the enhancement, claiming that the Government failed to present any evidence that the firearms were used to protect drugs or facilitate a drug transaction. Therefore, the Defendant argues that there is an insufficient nexus between the firearms and the felony of Maintaining a Common Nuisance.

The Defendant further argues that the Government wrongfully claims that "another felony offense" originates from a charge of Maintaining a Common Nuisance, pursuant to Indiana Code § 35-45-1-5, because the Government has failed to demonstrate that the Defendant maintained the house as his residence and/or condoned any illegal activity. The Defendant argues that his statement to the officers when he ran up to them and said "[t]his is my house," was an attempt to make the police officers believe he had an interest in the property so the officers would explain to him what was going on. Moreover, the Defendant states that he was making a rent payment on behalf of Goodson while his sister was babysitting.

Finally, the Defendant requests a variance in consideration of 18 U.S.C. § 3553(a)(2) sentencing factors.

The Government takes the position that there is sufficient evidence in the record to apply the enhancement.

**ANALYSIS**

As relevant here, U.S.S.G. § 2K2.1(b)(6)(B) provides for a four-level enhancement if a defendant "used or possessed any firearm or ammunition in connection with another felony offense." The Guidelines commentary explains that "in connection with" means the enhancement applies if the firearm "facilitated, or had the potential of facilitating," another felony offense. U.S.S.G. § 2K2.1, cmt. n.14(A). The Seventh Circuit maintains that the government must prove by a preponderance of the evidence that the firearm served a purpose with respect to the felonious conduct. *United States v. Wyatt*, 102 F.3d 241, 247 (7th Cir. 1996).

In determining whether the enhancement applies, "the court must consider the relationship between the instant offense and the other offense, consistent with relevant conduct principles." U.S.S.G. § 2K2.1 cmt. n. 14(E) (citing § 1B1.3(a)(1)–(4) and accompanying commentary). In other words, the court considers whether the firearm was "possessed in a manner that permits an inference that it facilitated or potentially facilitated—i.e., had some potential emboldening role in—a defendant's felonious conduct." *Wyatt*, 102 F.3d at 247 (citation omitted). The Seventh Circuit has repeatedly held that the seizure of a readily accessible firearm in the same home where illegal drugs are distributed is sufficient to infer that the firearm was used in connection with a drug trafficking operation. *See Wyatt*, 102 F.3d at 247 ("[I]t is widely acknowledged that guns are the 'tools of the trade' in the drug business."); *United States*

*v. Meece*, 580 F.3d 616 (7th Cir. 2009) (applying the enhancement when guns were located upstairs in the home and the scales and baggies on the main floor).

Therefore, the Court finds that the Defendant's possession of the firearms facilitated, or had the potential of facilitating, another felony offense.

The Court must also resolve whether the Defendant committed another felony offense. The Defendant's Guideline range can be determined based on his own conduct and conduct that he "aided or abetted, counseled, commanded, induced, procured, or willfully caused." U.S.S.G. § 1B1.3(a)(1)(A); *cf.* U.S.S.G. § 2K2.1(b)(6) cmt. n. 13(B). "Another felony offense" is defined as "any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." U.S.S.G. § 2K2.1 cmt. n.14(C). In Indiana, a person commits the offense of maintaining a common nuisance if the building, structure, vehicle, or other place is used for one or more of the following purposes: (1) to buy an alcoholic beverage; (2) to unlawfully use, keep, or sell a legend drug; (3) to unlawfully: (A) use, (B) manufacture, (C) keep, (D) offer for sale, (E) sell, (F) deliver, or (G) finance the delivery of, a controlled substance or an item of drug paraphernalia. The offense is a level 6 felony if the person knowingly or intentionally maintains a common nuisance.

The Defendant argues that he did not maintain the residence as his property or condone illegal activity inside the premises. However, the Indiana statute does not require a defendant's actual ownership of the premises in order to maintain a structure as a common nuisance. *Jones v. State*, 807 N.E.2d 58, 66 (Ind. Ct. App. 2004) ("[W]e reject [the defendant's] assertion that to be convicted under the statute, the person must own or legally possess the building or structure."). "In cases where the accused has exclusive possession of the premises on which the contraband is

found, an inference is permitted that he or she knew of the presence of contraband and was capable of controlling it." *Collins v. State*, 822 N.E.2d 214, 222 (Ind. Ct. App. 2005) (citing *Person v. State*, 661 N.E.2d 587, 590 (Ind. Ct. App. 1996)). "But, when possession of the premises is non-exclusive, the inference is not permitted absent some additional circumstances indicating knowledge of the presence of the contraband and the ability to control it." *Id.* Among the circumstances which will support such an inference are: (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) a drug manufacturing setting; (4) proximity of the defendant to the contraband; (5) contraband in plain view; and (6) location of the contraband in close proximity to items owned by the defendant. *Id.* "These circumstances apply to show constructive possession even where the defendant is only a visitor to the premises where the contraband is found." *Collins,* 822 N.E.2d at 222.

Here, the Defendant admitted twice that the residence was "his" to the officers, first when the officers were executing the warrant and a second time during his initial interview at the police station. He also admitted that he was in the midst of paying rent for the house when he heard about the execution of the search warrant. Even when the Defendant denied owning the residence, he admitted that he stayed there periodically. He has a key to the home as well as a key to the "master" padlock to the garage. Additional evidence demonstrating that the Defendant "maintained" residence at the house include his admission that the clothes in the bedroom of the house belong to himself, his wife, and his girlfriend. His girlfriend's children were at the residence when the officers arrived. Moreover, a prescription pill bottle with the Defendant's name was located in the dining room closet. The Defendant also advised that he owned the gun that was located under the mattress in the bedroom, which he kept for protection of the home.

Accordingly, the Court finds there is sufficient evidence to determine that the Defendant "maintained" the residence.

The remaining question is whether there is sufficient evidence that the residence constituted a common nuisance. Here, controlled substances were present and in plain view at the time the officers executed the search warrant, and the officers found a total of 67.3 grams of illegal narcotics. Many of these substances were found in individual clear plastic bags. An elaborate camera system was present at the residence and there were multiple scales present. The Defendant admitted that he used marijuana inside the residence and, on some occasions, others would come to the residence to smoke marijuana and party. The Defendant further advised that he had dealt illegal substances on about ten prior occasions.

Accordingly, the Court finds that the residence constituted a common nuisance, and the Defendant had the intent and capability to maintain dominion and control over the residence. For these reasons, the four level enhancement under § 2K2.1(b)(6)(B) is appropriately applied.

## CONCLUSION

For the reasons stated above, the Defendant's objection to the PSIR is OVERRULED. At the time of sentencing, the Court will address the portion of the Defendant's Sentencing Memorandum [ECF No. 32], in which the Defendant requests a variance in consideration of 18 U.S.C. § 3553(a)(2) sentencing factors.

SO ORDERED on October 20, 2017.

     s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT